# EXHIBIT 1

## IN THE DISTRICT COURT OF MURRAY COUNTY
## STATE OF OKLAHOMA

ATLANTIC SPECIALTY INSURANCE    )
COMPANY,                        )
                                )
       Plaintiff,               )  Case No. *CJ-2023-69*
                                )
      v.                       )
                                )  **F I L E D**
AIG CLAIMS, INC., and TATA AIG  )  MURRAY COUNTY, OKLAHOMA
GENERAL INSURANCE COMPANY       )
LIMITED,                        )  SEP 2 8 2023
                                )
      Defendants.              )  Jodi Jennings, Court Clerk
                                   By_____ Deputy

### PETITION

Plaintiff Atlantic Specialty Insurance Company ("Atlantic Specialty"), by and through its undersigned counsel, files this Complaint against Defendants AIG Claims, Inc. ("AIG Claims") and Tata AIG General Insurance Company Limited ("Tata AIG," and collectively with AIG Claims, "AIG"), and alleges as follows:

### NATURE OF ACTION

1.     In October 2019, Randi Shavonne Kirkland, a mother of four children, died tragically in a car accident on the Chickasaw Nation Turnpike when a car coming in the opposite direction crossed over the dividing line and struck her car.  The driver and the passenger in the oncoming vehicle were traveling on business for their employers at Hexaware Technologies, Inc. ("Hexaware US") and Hexaware Technologies Ltd. ("HTL").  Ms. Kirkland's estate sued the employees, along with Hexaware US and HTL, in this Court, and that wrongful death action was subsequently removed to the federal district court.  The case ultimately settled for $4 million. Although it provided primary insurance coverage for all four of the defendants in the wrongful death action, Tata AIG, acting through AIG Claims as its claims representative, refused to pay a single penny to the Kirkland estate and refused to contribute to the defense of two if its insureds

in the case. Atlantic Specialty, which provided auto and umbrella coverage to Hexaware US and its employee, paid for the entire settlement.

2.      In this action, Atlantic Specialty seeks to hold AIG Claims and Tata AIG accountable for their bad faith response to the Kirkland wrongful death action. Atlantic Specialty seeks to recover compensatory damages, punitive damages, and attorneys' fees for AIG Claims' and Tata AIG's bad faith, and to recover the amount Tata AIG should have contributed or paid towards the defense and settlement of the Kirkland wrongful death action.

## PARTIES

3.      Plaintiff Atlantic Specialty Insurance Company is an insurance company incorporated under the laws of New York with its principal place of business in Plymouth, Minnesota.

4.      Defendant AIG Claims, Inc. is a third party administrator incorporated under the laws of Delaware with its principal place of business in New York, New York.

5.      Defendant Tata AIG General Insurance Company Limited is an insurance joint venture formed under the laws of India with its principal place of business in Mumbai, India.

## JURISDICTION AND VENUE

6.      This Court has "unlimited original jurisdiction of all justiciable matters . . . ." Okla. Const. Art. 7, § 7(a).

7.      Venue is proper in this District under 12 O.S. § 137 because a substantial part of the events giving rise to Atlantic Specialty's claims occurred in this District, including AIG's bad faith response to the underlying wrongful death action that led to the current suit.

## FACTUAL ALLEGATIONS

### The Tata AIG Policy

8.      Tata AIG issued Commercial General Liability Policy No. 0301003332 (the " Tata

AIG Policy") to HTL and its subsidiaries, including Hexaware US, for the Policy Period from July

19, 2019 to July 18, 2020.[1]

9.      The Tata AIG Policy has an INR (Indian Rupee) 1,725,000,000 general aggregate

limit of insurance.  At the current exchange rate, INR 1,725,000,000 is approximately $21,000,000.

10.      The Tata AIG Policy's Non-Owned Hired Auto Liability Endorsement

("NOHAL") provides:

> The Company will pay on behalf of the Insured, all sums, which the
> Insured shall become legally obligated to pay as damages because
> of:
>
> **C.      Bodily Injury**
> **D.      Property Damage**
>
> to which this insurance applies, caused by an **occurrence** and
> arising out of the ownership, maintenance or use, including loading
> and unloading, of any **Non Owned Automobile** and or **Hired
> Automobile** . . . .

*See* Tata AIG Policy, NOHAL § I.

11.      The Tata AIG Policy defines "**Insured**" to include:

> (a)      **The Named Insured;**
>
> […]
>
> (c)      any other person while using a an [sic] **own automobile** or
> **hired automobile** with the permission of the **Named
> Insured**, provided his actual operation or (if he is not
> operating) his other actual [sic] thereof is within the scope of
> such permission, but with respect to **bodily injury** or
> **property damage** arising out of the loading or unloading

---

[1] Capitalized and/or bold terms are defined in the Policy.

thereof, such other person shall be an **Insured** only if he is :

(1)    a lessee or borrower of the **automobile**, or

(2)    an employee of the **Named Insured** or of such lessee or borrower;

(d)    any other such person or organization but only with respect to his or its liability because of acts or omissions of an **Insured** under (a), (b) or (c) above.

*See* Tata AIG Policy, NOHAL § II.

12.    The Tata AIG Policy provides the following in regard to the application of the Policy's retention:

> 2.    The policy will be issued subject to the following conditions:
>
> […]
>
> - For operations domiciled in India, the policy will operate on a grounds-up basis
>
> […]
>
> - For operations domiciled in US and Canada the policy will operate in excess of INR 69,000,000 [approximately $840,000] each occurrence and in the Aggregate in each country or underlyer [sic] policy limit which [sic] every is higher.
>
> […]
>
> 7.    Non-owned and Hired Passenger Carrying Automobile Liability coverage as per policy subject to:
>
> - For Rest of the World Jurisdiction, this cover is in excess of INR 69,000,000 [approximately $840,000] any one Occurrence . . . .

*See* Tata AIG Policy, Declarations.

13.    With respect to other insurance, the Tata AIG Policy states:

It is expressly understood and agreed that the insurance provided by this Policy is primary for the Insured(s). If at any time any claim arises under the Policy, should there be any other insurance covering the same loss or damage such other insurance

4

shall be only an excess coverage and non-contributing herewith notwithstanding the rights of subrogation against the other Insurers.

*See* Tata AIG Policy, Primary and Non Contributory Insurance Endorsement.

### The Atlantic Specialty Policy

14.    Atlantic Specialty issued Commercial Liability Policy No. 711-01-18-41-0009 (the "Atlantic Specialty Policy") to Hexaware US for the Policy Period from April 1, 2019 to April 1, 2020.  The Atlantic Specialty Policy contains a Commercial Auto Coverage Part (the "CACP").

15.    The CACP has a $1 million Limit of Liability.

16.    The CACP states that: "[w]e will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *See* CACP § II(A).

17.    The CACP defines "insureds" as:

  a.    You for any covered "auto".

  b.    Anyone else while using with your permission a covered 'auto' you own, hire or borrow . . .

  c.    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*See* CACP § I(A)(1).

18.    The Broad Form Automobile Endorsement amends the definition of who is an insured to include as an "insured" an "employee" while:

  (1)    Using a covered "auto" you do not own, hire or borrow in your business or your personal affairs.

  (2)    Operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

5

*See* CACP, Broad Form Automobile Endorsement § B(3)(a).

19.     The CACP has an Other Insurance clause, which states that:

    a.     For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance . . . .

    […]

    d.     When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

*See* CACP § IV(B)(5).

20.     The CACP contains a provision that transfers any rights of recovery the insured

may have to Atlantic Specialty:

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

*See* CACP § IV(5).

21.     The Atlantic Specialty Policy also has a Commercial Umbrella Coverage Part (the

"CUCP") with a $5 million Limit of Liability.

22.     The CUCP states that "[w]e will pay on behalf of the insured the 'Ultimate Net

Loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which

this insurance applies." *See* CUCP § I(1)(a).

23.     The CUCP defines "Ultimate Net Loss" as "the total amount of damages in excess

of the 'retained limit' for which the insured is legally liable in payment of 'bodily injury,' 'property

damage,' and 'personal and advertising injury.'" *See* CUCP § V(27).

24.     The CUCP defines "retained limit" as "the total of all insurance amounts available to the insured and applicable to any loss covered under this Coverage Part." *See* CUCP § V(22).

25.     The CUCP defines an insured for the use of "covered autos" as follows:

a.     You are an insured.

b.     Anyone else while using with your permission a 'covered auto' you own, hire, or borrow is also an insured . . . .

c.     Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

*See* CUCP § II(2).

26.     The definition of "covered auto" in the CUCP is "only those 'autos' to which 'underlying insurance' applies." *See* CUCP § V(5).

27.     The CUCP also contains its own Other Insurance clause, which states that:

a.     Excess Insurance

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis; or scheduled in 'Underlying Insurance' or not, except insurance bought by you to specifically apply in excess of this Coverage Part.

b.     We will have no duty under Coverages A or B to defend any claim or 'suit' if any other insurer had or has a duty to defend. If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under this or any other insurance.

> We will share the remaining loss, if any, with any other
> insurance that is not described in this excess insurance
> provision.

*See* CUCP § IV(5).

28.    The CUCP also contains a provision that transfers any rights of recovery the insured

may have to Atlantic Specialty:

> Transfer Of Rights Of Recovery Against Others To Us
>
> If the insured has rights to recover all or part of any payment we have made under
> this Coverage Part, those rights are transferred to us. The insured must do nothing
> after loss to impair them. At our request, the insured will bring 'suit' or transfer
> those rights to us and help us enforce them . . . .

*See* CUCP § IV(8).

### The Kirkland Wrongful Death Action

29    On the evening of October 1, 2019, Randi Shavonne Kirkland was headed

westbound on the Chickasaw Nation Turnpike when an oncoming driver crossed over the dividing

line and struck Ms. Kirkland's vehicle, ramming her vehicle off the road and flipping it over.

30.    The impact was so forceful that it caused Ms. Kirkland to be ejected from the

vehicle, and she suffered multiple blunt force trauma, resulting in her death. The accident occurred

at approximately 9:43 p.m., and Ms. Kirkland was pronounced dead at 10:25 p.m..

31.    Given the impact marks on the vehicle and the fact that the accident occurred in the

shoulder of Ms. Kirkland's lane, it appears that Ms. Kirkland tried to swerve to avoid the collision

but was struck anyway because the oncoming driver was so far over the dividing line.

32.    At the time of her death, Ms. Kirkland was estranged from her husband and had

four children, three of whom were minors (including a two-year old). Ms. Kirkland's mother later

stated in deposition that she would do her best to raise the children, but that they needed their

mother.

8

33.     The oncoming driver was identified as Gaurav Shukla, an Illinois resident who was in Oklahoma on business for Hexaware US and driving a rental car.  Ujjwal Narayan was the passenger in the rental car.  Mr. Narayan, who resided in India at the time of the accident, was in Oklahoma with Mr. Shukla on business and was employed by HTL.

34.     The Estate of Randi Shavonne Kirkland sued Mr. Shukla, Mr. Narayan, Hexaware US, and HTL for Ms. Kirkland's wrongful death in Murray County, Oklahoma.  The lawsuit was styled *The Estate of Randi Shavonne Kirkland, by and through Special Administrator, Virginia Kirkland v. Hexaware Technologies Inc., et al.*, No. CJ-2019-00053 (Murray Cnty., Dist. Ct., Okla.).  On December 3, 2019, the case was removed to the U.S. District Court for the Eastern District of Oklahoma and given the case number 6:19-cv-00411.

35.     The lawsuit alleged that Mr. Shukla was negligent, negligent per se, grossly negligent, and reckless in his operation of a motor vehicle by breaking a number of Oklahoma traffic laws, driving over the speed limit at the time of Ms. Kirkland's death, and driving without an appropriately obtained driver's license.

36.     The lawsuit alleged that Mr. Narayan, as Mr. Shukla's passenger, was negligent and caused and/or contributed to causing personal injuries and wrongful death to Ms. Kirkland.

37.     The lawsuit alleged that Hexaware US and HTL, as the employers of Mr. Shukla and Mr. Narayan, respectively, were vicariously liable for the wrongful death of Ms. Kirkland.

38.     Ms. Kirkland's Estate demanded damages, including the grief of Ms. Kirkland's children and parents; the loss of care, training, guidance, or education that Ms. Kirkland would have shown her children; the loss of Ms. Kirkland's companionship to her children and parents; Ms. Kirkland's pain and suffering; and medical and burial expenses.

9

39.     Ms. Kirkland's Estate also demanded personal injury damages, including physical and mental pain and suffering from the time of the wreck until death, the permanent injuries that were inflicted on Ms. Kirkland, the total physical impairment from the time of the wreck until death, and the disfigurement Ms. Kirkland suffered.

**AIG's Bad Faith Response To The Kirkland Wrongful Death Action**

40.     On October 22, 2019, Tata AIG acknowledged notice of Ms. Kirkland's death and assigned it claim number 0821685554A.

41.     On August 28, 2020, Atlantic Specialty sent a letter to AIG Claims and Tata AIG in order to coordinate the defense of the defendants.  The letter acknowledged potential coverage under the Atlantic Specialty Policy for Hexaware US and Mr. Shukla, and advised that the Atlantic Specialty Policy did not afford any coverage for HTL or Mr. Narayan.  Atlantic Specialty undertook the defense of Hexaware US and Mr. Shukla in the Kirkland wrongful death action. HTL and Mr. Narayan, along with Hexaware US and Mr. Shukla, were all Insureds under the Tata AIG Policy.

42.     On September 29, 2020, AIG Claims stated that a World Risk policy (which did not apply to US claims) was somehow excess to the Atlantic Specialty primary policy.  This was a plainly false and inaccurate statement.

43.     On October 5, 2020, AIG Claims acknowledged that the Tata AIG Policy covered Hexaware US on an excess basis.

44.     On March 31, 2022, in a letter from Tata AIG to Atlantic Specialty (with AIG Claims carbon copied), Tata AIG acknowledged that HTL, Hexaware US, Mr. Shukla, and Mr. Narayan were all Insureds under the Tata AIG Policy, but did not indicate that it would contribute any money towards the defense of Hexaware US or Mr. Shukla or towards settlement

of the Kirkland case on behalf of any of the defendants that AIG Claims otherwise acknowledged were insured under the Tata AIG Policy.

45.     On May 4, 2022, in order to gain clarification on AIG's position ahead of an approaching mediation, Atlantic Specialty sent a letter attempting to confirm AIG's earlier position that coverage for defense and liability for HTL, Hexaware US, Mr. Shukla, and Mr. Narayan would apply after the four defendants collectively incurred INR 69,000,000 [approximately $840,000] in legal fees, settlement payments, judgments, or other costs of defense. The May 4, 2022 letter additionally asserted Atlantic Specialty's position that the Tata AIG Policy provided primary coverage. AIG Claims and Tata AIG did not respond.

46.     During a June 16, 2022 call, AIG Claims maintained that they were still working on a coverage letter, and that it might not even be ready before mediation. AIG Claims also stated that its settlement valuation for the Kirkland wrongful death case was $1.5 million. It is unclear upon what information AIG Claims based this low-ball valuation in a case of clear liability for the death of a young woman with children.

47.     A representative from AIG Claims was present at a June 21, 2022 mediation in the Kirkland wrongful death case.

48.     As a result of the mediation, Ms. Kirkland's Estate agreed to settle its claims against the defendants (i.e., Messrs. Shukla and Narayan, Hexaware US, and HTL) for $4 million. Despite the fact that Tata AIG insured each of the defendants on a primary basis and that the case presented a most significant liability exposure, AIG Claims and Tata AIG refused, without reason or explanation, to pay a single penny to Ms. Kirkland's Estate. Given AIG Claims' and Tata AIG's most unreasonable position, and to protect Atlantic Specialty's Insureds, Atlantic Specialty stepped forward to pay the entire $4 million settlement, paying $1 million under the Atlantic

11

Specialty Policy's CACP and $3 million under the Atlantic Specialty Policy's CUCP.

49.     Atlantic Specialty also paid $222,587.72 in defense costs on behalf of Hexaware US and Mr. Shukla for the Kirkland wrongful death action.

50.     After the settlement, Atlantic Specialty attempted to engage AIG Claims in discussions about Tata AIG's proper share and required contribution to the Kirkland settlement. Again, AIG Claims did not respond.

51.     To date, AIG has never offered to contribute any money to the Kirkland settlement or to the defense provided by Atlantic Specialty to Mr. Shukla and Hexaware US.

**COUNT I**
**(Breach Of Duty Of Good Faith And Fair Dealing against AIG Claims)**

52.     Atlantic Specialty repleads, realleges, and incorporates by reference the foregoing paragraphs as though fully set forth herein.

53.     Tata AIG and AIG Claims acknowledged that HTL, Hexaware US, Mr. Shukla, and Mr. Narayan were insured under the Tata AIG Policy.

54.     The Tata AIG Policy provided that Tata AIG "will pay on behalf of the Insured, all sums, which the Insured shall become legally obligated to pay as damages because of . . . **Bodily Injury** . . . caused by an **occurrence** and arising out of the . . . use . . . of any **Non Owned Automobile** . . . ." *See* Tata AIG Policy, NOHAL § I.

55.     The Kirkland wrongful death action involved damages that the Insureds became legally obligated to pay because of Bodily Injury caused by an occurrence and arising out of the use of a Non Owned Automobile.

56.     The Tata AIG Policy therefore provided coverage for HTL, Hexaware US, Mr. Shukla, and Mr. Narayan in response to the Kirkland wrongful death action.

57.     As claims administrator for Tata AIG, AIG Claims owed a duty of good faith and

12

fair dealing to the insured defendants in the Kirkland wrongful death action.

58.     AIG Claims acted unreasonably and in bad faith in handling the Kirkland wrongful death case on behalf of HTL, Hexaware US, Mr. Shukla, and Mr. Narayan by failing to diligently evaluate the case.

59.     AIG Claims acted unreasonably and in bad faith in handling the Kirkland wrongful death case by making false assertions that an unrelated and inapplicable AIG World Risk policy was excess to the Atlantic Specialty Policy.

60.     AIG Claims acted unreasonably and in bad faith by failing to pay a single penny towards the defense of Hexaware US and Mr. Shukla in the Kirkland wrongful death case after it acknowledged in writing that they were insured under the Tata AIG Policy.

61.     AIG Claims acted unreasonably and in bad faith by refusing to pay a single penny towards the settlement of the Kirkland wrongful death action after it acknowledged that each of the defendants in that action were insured under the Tata AIG Policy.

62.     Because AIG Claims acted unreasonably and in bad faith, Atlantic Specialty was forced to pay amounts in defense and settlement of the Kirkland wrongful death action that Tata AIG should have paid.

63.     Furthermore, AIG Claims recklessly disregarded its duty to deal fairly and in good faith with Hexaware US and Mr. Shukla in response to the Kirkland wrongful death action by making false assertions regarding an inapplicable AIG World Risk policy, failing to diligently evaluate the case, failing to have Tata AIG contribute to the defense of Hexaware US and Mr. Shukla, and failing to have Tata AIG contribute a single penny towards settlement, despite acknowledging that each of the defendants were insured under the Tata AIG Policy.

64.     Because Atlantic Specialty paid to defend and settle the Kirkland wrongful death

action on behalf of Hexaware US and Mr. Shukla, Atlantic Specialty became subrogated to their rights against AIG Claims and Tata AIG pursuant to CACP § IV(5) and CUCP § IV(8) of the Atlantic Specialty Policy.

65.     Atlantic Specialty, having subrogated to the rights of Hexaware US and Mr. Shukla, therefore requests this Court enter judgment against AIG Claims for damages stemming from the bad faith conduct of AIG Claims in its handling of the Kirkland wrongful death action along with attorneys' fees and punitive damages.

### COUNT II
### (Breach Of Duty Of Good Faith And Fair Dealing against Tata AIG)

66.     Atlantic Specialty repleads, realleges, and incorporates by reference the foregoing paragraphs as though fully set forth herein.

67.     Tata AIG acknowledged that HTL, Hexaware US, Mr. Shukla, and Mr. Narayan were insureds under the Tata AIG Policy.

68.     As insurer, Tata AIG owed a duty of good faith and fair dealing to each of the defendants in the Kirkland wrongful death action.

69.     Tata AIG acted unreasonably and in bad faith in handling the Kirkland wrongful death case on behalf of HTL, Hexaware US, Mr. Shukla, and Mr. Narayan by failing to diligently evaluate the case.

70.     Tata AIG acted unreasonably and in bad faith in handling the Kirkland wrongful death case by failing to attend mediation after agreeing to participate.

71.     Tata AIG acted unreasonably and in bad faith by failing to pay a single penny towards the defense of Hexaware US and Mr. Shukla in the Kirkland wrongful death case after acknowledging in writing that they were insured under the Tata AIG Policy.

72.     Tata AIG acted unreasonably and in bad faith by failing to pay a single penny

14

towards settlement of the Kirkland wrongful death case after acknowledging in writing that each of the defendants in that action were insured under the Tata AIG Policy.

73.     Because Tata AIG acted unreasonably and in bad faith, Atlantic Specialty was forced to pay amounts in defense and settlement of the Kirkland wrongful death action that Tata AIG should have paid.

74.     Furthermore, Tata AIG recklessly disregarded its duty to deal fairly and in good faith with Hexaware US and Mr. Shukla in response to the Kirkland wrongful death action by failing to diligently evaluate the case, failing to contribute to the defense of Hexaware US and Mr. Shukla, and failing to contribute a single penny towards the settlement, despite acknowledging that each of the defendants were insured under the Tata AIG Policy.

75.     Because Atlantic Specialty paid to defend and settle the Kirkland wrongful death action on behalf of Hexaware US and Mr. Shukla, Atlantic Specialty became subrogated to their rights against AIG Claims and Tata AIG pursuant to CACP § IV(5) and CUCP § IV(8) of the Atlantic Specialty Policy.

76.     Atlantic Specialty, having subrogated to the rights of Hexaware US and Mr. Shukla, therefore requests this Court enter judgment against Tata AIG for damages stemming from the bad faith conduct of Tata AIG in its handling of the Kirkland wrongful death action along with attorneys' fees and punitive damages.

## COUNT III
### (Breach of Contract against Tata AIG)

77.     Atlantic Specialty repleads, realleges, and incorporates by reference the foregoing paragraphs as though fully set forth herein.

78.     The Tata AIG Policy is a valid contract for insurance between Tata AIG, HTL, and Hexaware US, with Mr. Shukla and Mr. Narayan being beneficiaries to the contract.

79.     Under the terms of the Tata AIG Policy, Tata AIG had an obligation to participate in the defense of Hexaware US and Mr. Shukla in the Kirkland wrongful death action.

80.     Under the terms of the Tata AIG Policy, Tata AIG had an obligation to contribute to the settlement on behalf of Hexaware US and Mr. Shukla in the Kirkland wrongful death action.

81.     Tata AIG breached the terms of the Tata AIG Policy by failing to fund the defense of Hexaware US and Mr. Shukla and by failing to contribute to the settlement on their behalf in the Kirkland wrongful death action.

82.     As a result of Tata AIG's breach of the Tata AIG Policy, Hexaware US and Mr. Shukla incurred damages by having to defend and settle the Kirkland wrongful death action without any financial contribution from Tata AIG.

83.     Because Atlantic Specialty paid to defend and settle the Kirkland wrongful death action on behalf of Hexaware US and Mr. Shukla, Atlantic Specialty has subrogated to their rights against Tata AIG pursuant to CACP § IV(5) and CUCP § IV(8) of the Atlantic Specialty Policy.

84.     Atlantic Specialty, having subrogated to the interests of Hexaware US and Mr. Shukla, requests this Court enter judgment against Tata AIG for the amount that Tata AIG should have contributed towards the defense and settlement of the Kirkland wrongful death action.

### COUNT IV
### (Equitable Contribution against Tata AIG)

85.     Atlantic Specialty repleads, realleges, and incorporates by reference the foregoing paragraphs as though fully set forth herein.

86.     Under the terms of the Tata AIG Policy and the Atlantic Specialty Policy, both Tata AIG and Atlantic Specialty had an obligation to Mr. Shukla and Hexaware US to contribute to the payment of defense costs and settlement in the Kirkland wrongful death action.

87.     The Tata AIG Policy contained a Primary and Non Contributory Insurance Endorsement, which states that "[i]t is expressly understood and agreed that the insurance provided by [the Tata AIG Policy] is primary for the Insured(s)."  *See* Tata AIG Policy, Primary and Non Contributory Insurance Endorsement.

88.     Tata AIG has acknowledged that HTL, Hexaware US, Mr. Shukla, and Mr. Narayan were insured under the Tata AIG Policy.

89.     The Tata AIG Policy operates on a "grounds-up basis" for operations "domiciled in India."  *See* Tata AIG Policy, Declarations.

90.     At the time of the accident, Mr. Narayan was employed by HTL, which is headquartered in Mumbai, India.

91.     At the time of the accident, Mr. Narayan was in the process of performing work for HTL.

92.     Therefore, the Kirkland wrongful death case arose out of operations that were domiciled in India and the Tata AIG Policy operates on a "grounds-up basis" as a primary policy for HTL, Hexaware US, Mr. Shukla, and Mr. Narayan, with no retention required under the terms of the Tata AIG Policy.

93.     Even if a retention of INR 69,000,000 [approximately $840,000] was required to be paid before the Tata AIG Policy contributed to the defense or settlement of Hexaware US and Mr. Shukla, that retention was satisfied by Atlantic Specialty's payments of legal fees, settlement payments, judgments, or other costs of defense in the Kirkland wrongful death case.

94.     To the extent that Tata AIG and Atlantic Specialty were both insurers at the same level covering bodily injury associated with automobile liability for Hexaware US and Mr. Shukla, Atlantic Specialty is entitled to equitable contribution from Tata AIG.

17

95.     Atlantic Specialty has incurred defense and settlement costs associated with the Kirkland wrongful death action totaling $4,222,587.72, and Tata AIG has paid nothing towards the defense of Hexaware US and Mr. Shukla, nor has Tata AIG paid anything towards the Kirkland settlement for any of the defendants in the Kirkland wrongful death action.

96.     Atlantic Specialty therefore requests this Court enter judgment against Tata AIG for Tata AIG's proper share towards the defense and settlement of the Kirkland wrongful death action.

### COUNT V
### (Contractual Subrogation against Tata AIG)

97.     Atlantic Specialty repleads, realleges, and incorporates by reference the foregoing paragraphs as though fully set forth herein.

98.     Under the terms of the Tata AIG Policy, Hexaware US and Mr. Shukla were insured under that Policy, and therefore Tata AIG was required to defend and indemnify them in response to the Kirkland wrongful death action.

99.     Tata AIG refused and failed to pay any money on behalf of Hexaware US and Mr. Shukla towards the defense and settlement of the Kirkland wrongful death action.

100.    Atlantic Specialty, as an insurer for Hexaware US and Mr. Shukla, was forced to pay amounts in defense and settlement of the Kirkland wrongful death action that Tata AIG should have paid.

101.    Because Atlantic Specialty paid to defend and settle the Kirkland wrongful death action on behalf of Hexaware US and Mr. Shukla, Atlantic Specialty subrogated to their rights against Tata AIG pursuant to CACP § IV(5) and CUCP § IV(8) of the Atlantic Specialty Policy.

102.    Atlantic Specialty, having subrogated to the rights of Hexaware US and Mr. Shukla, requests this Court enter judgment against Tata AIG for the amount that Tata AIG properly should

have paid on behalf of Hexaware US and Mr. Shukla towards the defense and settlement of the Kirkland wrongful death action.

## COUNT VI
### (Equitable Subrogation against Tata AIG)

103.   Atlantic Specialty repleads, realleges, and incorporates by reference the foregoing paragraphs as though fully set forth herein.

104.   Hexaware US and Mr. Shukla were insured under both the Tata AIG Policy and the Atlantic Specialty Policy in connection with the Kirkland wrongful death action.

105.   The Tata AIG Policy's Primary and Non Contributory Insurance Endorsement states that "[i]t is expressly understood and agreed that the insurance provided by [the Tata AIG Policy] is primary for the Insured(s)." *See* Tata AIG Policy, Primary and Non Contributory Insurance Endorsement.

106.   By its express terms, the Atlantic Specialty Policy CACP was "excess over any other collectible insurance . . . ." *See* CACP § B(5), as amended by the Broad Form Automobile Endorsement.

107.   Because there was no retention for the primary Tata AIG Policy, Hexaware US and Mr. Shukla were immediately entitled to coverage under the Tata AIG Policy and the Tata AIG Policy was "collectible insurance" as that term was used in the Atlantic Specialty Policy CACP.

108.   Even if a retention of INR 69,000,000 [approximately $840,000] was required to be paid before the Tata AIG Policy contributed to the defense or settlement of Hexaware US and Mr. Shukla, that retention was satisfied by Atlantic Specialty's payments of legal fees, settlement payments, judgments, or other costs of defense in the Kirkland wrongful death case through the CACP.  After the retention was paid, the Tata AIG Policy become "collectible insurance" as that term is used in the Atlantic Specialty Policy CACP.

109.    Because the Tata AIG Policy was primary and the Atlantic Specialty Policy CACP was excess, Tata AIG was required to exhaust the limits of the Tata AIG Policy before Atlantic Specialty contributed to the defense or settlement of Hexaware US and Mr. Shukla under the remaining limits of the Atlantic Specialty Policy CACP.

110.    By its express terms, the Atlantic Specialty Policy CUCP was "excess over, and [should] not contribute with any other insurance, whether primary, excess, contingent or on any other basis . . ." *See* CUCP § IV(5).

111.    Because there was no retention for the primary Tata AIG Policy, Hexaware US and Mr. Shukla were entitled to coverage under the Tata AIG Policy, and the Tata AIG Policy was "other insurance" as that term was used in the Atlantic Specialty Policy CUCP.

112.    Even if a retention of INR 69,000,000 [approximately $840,000] was required to be paid before the Tata AIG Policy contributed to the defense or settlement of Hexaware US and Mr. Shukla, that retention was satisfied by Atlantic Specialty's payments of legal fees, settlement payments, judgments, or other costs of defense in the Kirkland wrongful death case.  After the retention was paid, the Tata AIG Policy become "other insurance" as that term is used in the Atlantic Specialty Policy CUCP.

113.    Because the Tata AIG Policy was primary and the Atlantic Specialty Policy CUCP was excess, Tata AIG was required to exhaust the limits of the Tata AIG Policy before Atlantic Specialty contributed to the defense or settlement of Hexaware US and Mr. Shukla under the Atlantic Specialty Policy CUCP.

114.    Tata AIG failed to pay on behalf of Hexaware US and Mr. Shukla any amount towards the defense costs and settlement associated with the Kirkland wrongful death case.

115.    Atlantic Specialty was forced to pay amounts in defense and settlement of the

Kirkland wrongful death case under the CACP and CUCP of the Atlantic Specialty Policy that Tata AIG should have paid.

116.    Because Atlantic Specialty paid to defend and settle the Kirkland wrongful death action on behalf of Hexaware US and Mr. Shukla, Atlantic Specialty subrogated to their rights against Tata AIG pursuant to CACP § IV(5) and CUCP § IV(8) of the Atlantic Specialty Policy.

117.    Atlantic Specialty, having subrogated to the rights of Hexaware US and Mr. Shukla, requests this Court enter judgment against Tata AIG for the amount that Tata AIG should have contributed on behalf of Hexaware US and Mr. Shukla towards the defense and settlement of the Kirkland wrongful death action.

## **PRAYER FOR RELIEF**

WHEREFORE, Atlantic Specialty prays and seeks:

a.      compensatory damages payable by AIG Claims and/or Tata AIG in an amount in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code;

b.      an award of punitive damages against AIG Claims and/or Tata AIG;

c.      the amount Tata AIG should have paid towards the defense and settlement of the Kirkland wrongful death action;

d.      an award of Atlantic Specialty's attorneys' fees and costs incurred in prosecuting this action payable by AIG Claims and/or Tata AIG; and

e.      all other legal and equitable relief as this Honorable Court deems proper.

Respectfully submitted,

FOB F. JONES, OBA # 015269
1010 West Second Street
Sulphur, OK 73102-8273

21

(580) 622-6888

AND

Evan G. Vincent, OBA #22325
CROWE & DUNLEVY, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
evan.vincent@crowedunlevy.com

**ATTORNEYS FOR PLAINTIFF, ATLANTIC
SPECIALTY INSURANCE COMPANY**

5424057